IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:23CR462 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | |
| | ) | |
| DARVELL JACKSON, | ) | <u>GOVERNMENT'S SENTENCING</u> |
| | ) | <u>MEMORANDUM</u> |
| Defendant. | ) | |

Now comes the United States of America, by and through its counsel, Rebecca C. Lutzko, United States Attorney, and Kelly L. Galvin, Assistant United States Attorney, and hereby provides the following in support of its sentencing memorandum. The Government submits that the United States Probation Office properly calculated Jackson's Offense Level and Criminal History Category, Offense Level 34 without acceptance of responsibility, Criminal History Category II, producing an advisory Guideline range of 168-210 months imprisonment.

I. **FACTUAL BASIS AND PROCEDURAL HISTORY**

On August 23, 2023, Darvell Jackson was charged in a 7 Count indictment as applied to him, for Conspiring to Possess a Machinegun (Count 1), in violation of 18 U.S.C. §§ 371 and 922(o), Conspiring to Engage in the Business of Dealing Firearms without a License (Count 2), in violation of 18 U.S.C. §§ 371 and 922(a)(1)(A), substantive counts of Possession of a Machinegun (Counts 4, 5 and 6), and Possession of an Obliterated Firearm (Count 7), in violation of 18 U.S.C. § 922(k). (R. 1: Indictment, PageID 1). Jackson was arrested on the indictment on August 30, 2023. (R. 170: Presentence Report *SEALED* PageID 1264). Following a detention hearing he was ordered released on September 29, 2023, on pretrial supervision. (*Id.*). This Court issued a

warrant for failing to comply with pretrial supervision on June 7, 2023, and Jackson was arrested on August 21, 2024, for new offenses. (*Id.*, PageID 1265-66).

The government agrees with the offense conduct described in the Presentence Report. (*Id.*, ¶¶ 1-17, PageID 1266-69). In addition to the described offense conduct of the undercover agents'-controlled purchases of firearms with Jackson, the government herein submits screen shots from the video evidence.

On June 12, 2023, Jackson was recruited by Malachi Berry to meet with agents to sell machinegun conversion devices (MCDs), also known as "switches" or "buttons." (*Id.*, ¶ 11, PageID 1268). Jackson arrived by car separate from Berry and met with agents in a shopping center parking lot. Although it was early summer and approximately 1:00 p.m., Jackson was wearing a black sweatsuit with the hood up and a black facial mask, partially concealing his face. (*Id.*). Upon entering the front seat of the agent's car, he immediately asked if the agent was "police." (*Id.*). The agent responded that he was not and that he "trafficked" guns to Canada. (*Id.*). Satisfied with the answer, Jackson pulled out a Glock .45 caliber pistol with a MCD affixed, concealed in his waist band, and began describing how the MCD operated. (*Id.*).



After demonstrating how the MCD functioned and explaining that it would fire all ammunition with one pull of the trigger, Jackson and the agent discussed the price of $1,300, which Jackson confirmed was the price Berry had stated it would cost. (*Id.*).

2



Jackson said he had another firearm for sale, a Masterpiece Arms 9mm pistol with a high-capacity magazine (reported stolen), which he retrieved from the car he arrived in, and sold to the agent for $1,000. (*Id.*). Jackson told agents he went by the name "Switch." (*Id.*). Jackson agreed to sell other firearms, a Glock .40 caliber pistol and a Glock 9mm pistol with a MCD affixed, on June 13, 2023, for $2,000.[1] He was dressed similar to the black sweatsuit on June 12th but did not wear a face mask. During the June 13th transaction, Jackson was shown a compartment in the car where agents stored the firearms following the purchase.

Jackson sold agents three more firearms and two MCDs on June 22, 2023, and July 24, 2023. (*Id.*, ¶ 12-13, and 17, PageID 1268-69). In total, Jackson sold seven (7) firearms and four (4) machinegun conversion devices to agents. (*Id.*, ¶¶ 1-17, PageID 1266-69). However, during the time of the conspiracy, Jackson committed other acts involving firearms with indicted and unindicted co-conspirators, including Maurice Hardman.[2] (*Id.*, ¶ 14-16, PageID 1268-69). Jackson and others were found in possession of two firearms, a fully automatic Del-Ton 5.56 caliber rifle

---

[1] Both pistols were linked by NIBIN to shootings. (*Id.*, ¶ 13, PageID 1268).

[2] Jermaine Mittman is under state indictment for murder, robbery, and felonious assault in Case Number CR-24-691206-A, in the Cuyahoga County Common Pleas Court.

with a high-capacity magazine and a stolen Glock .45 caliber pistol that was used in multiple shootings among other contraband.[3] (*Id.*).

| DATE | FIREARM | SOLD BY | BERRY BROKER FEE | PRICE |
|---|---|---|---|---|
| 6/12/23 | Glock, Model 21, .45 caliber pistol, serial number AERW465, with machinegun conversion device, and Masterpiece Arms, MPA30T, 9mm, Serial number FX24586, | Jackson | $200 | $2,300 |
| 6/13/23 | Glock, Model 27, .40 caliber pistol, serial number RWM089, and a Glock, Model 19X, 9mm, serial number BKHK977, with a machine gun conversion device | Jackson | $200 | $2,000 |
| 6/22/23 | Glock, Model 43X, 9 mm pistol, serial number BUER109, and a Ruger, Model SR40, .40 caliber pistol, with an obliterated serial number | Jackson | $100 | $1,300 |
| 7/24/23 | Romarm/Cugir, Model Micro Draco, 7.62x39mm, serial number PMD-33685 and two (2) machinegun conversion devices | Jackson | | $1,700 (rifle) $900 (both switches) |

The government agrees with the calculations contained in the Presentence Report; the base offense of 18, and the application of the specific offense characteristics for the number of firearms, an obliterated firearm, trafficking in firearms, and transportation outside the United States, resulting in a total offense level of 34 before acceptance of responsibility. (*Id.*, ¶¶ 24-33, PageID 1270). The government further agrees Jackson submitted a statement for acceptance, but that his pretrial release conduct has not demonstrated continued acceptance of responsibility. (*Id.*). Based on the total offense level of 34, at a criminal history category II, the advisory guideline range is 168-210 months. While the highest statutory maximum is 120 months, the government believes

---

[3] These firearms were properly counted under § 1B1.3 "relevant conduct" to support the sentencing enhancement for number of firearms (8-24) pursuant to § 2K2.1(b)(1)(B). Hardman was present with Jackson during the June 12th and June 13th transactions, although he was not directly involved in the transactions.

this Court should consider consecutive sentences to address the Section 3553(a) sentences factors of punishment, deterrence, and to protect the public.

II.     LAW AND ARGUMENT

The government respectfully requests this Court adopt the calculations contained in the Presentence Report, including the application of § 2K2.1(B)(6)(A) and the denial of acceptance of responsibility. The government further recommends this Court consider imposing consecutive sentences, either consecutive sentence as to federal counts of conviction or consecutive to any potential state sentence.

    A.   <u>Acceptance of Responsibility</u>.

U.S.S.G. § 3E1.1(a) states that "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense," the district court must "decrease the [total] offense level by 2 levels." The defendant bears the burden to demonstrate acceptance of responsibility by a preponderance of the evidence. *United States v. Denson*, 728 F.3d 603, 614 (6th Cir. 2013). And the test for determining whether the defendant has met that burden is a "two-step inquiry:" first, whether the defendant has "demonstrated significant evidence of acceptance of responsibility;" and second, whether that evidence is "outweighed by conduct inconsistent with such acceptance[.]" *United States v. Hollis*, 823 F.3d 1045, 1047 (6th Cir. 2016).

Jackson was initially detained but following a detention hearing the Court granted pretrial release on September 29, 2023. Jackson entered a guilty plea to the indictment without a written plea agreement on May 31, 2024. Just a month before his guilty plea Jackson struggled to comply with the Court's pretrial release orders, including not maintaining his residence with his third-party custodian, failing to complete his assessment and attend drug screens, and testing positive for marijuana multiple times. (R. 162: PSR *SEALED* ⁋ 4, PageID 1094). Pursuant to this Court's

order, Probation Officer Stockton attempted to conduct an interview of Jackson on June 24, 2024, but was informed by counsel that Jackson's whereabouts were unknown. (*Id.*, ¶ 48, PageID 1102). Jackson was arrested on August 21, 2024, and charged with felony offenses including multiple counts of aggravated robbery and felonious assault in Cuyahoga County Common Pleas Court. (*Id.*, ¶ 46, PageID 1101).

The Presentence Report writer acknowledged that following his August 21st arrest, Jackson subsequently gave a statement for acceptance of responsibility. (*Id.*, ¶ 20-21, PageID 1097). However, the writer determined that Jackson's pretrial release conduct was in contravention to his acceptance of responsibility and declined to apply reductions under § 3E1.1(a) or (b). (*Id.*, ¶ 34, PageID 1099).[4] Jackson further acknowledged that he failed to comply with pretrial release supervision requirements and after initially blaming his pretrial officer admitted that he could have made better choices. (*Id.*, ¶ 5, PageID 1094). Most importantly, Jackson did not turn himself in, rather was arrested based on probable cause that he had committed new felony offenses.

Multiple decisions support a district court's denial of acceptance under similar circumstances. *See United States v. Merritt*, 102 F.4th 375 (6th Cir. 2024) (obstruction enhancement correctly applied and acceptance denied for defendant who absconded from pretrial release, provided a fake address, fled from police in a traffic stop, and was arrested eight months later); and *United States v. Watkins*, 86 F. App'x 934 (6th Cir. 2007) (denial of acceptance upheld where Watkins absconded from court-ordered pretrial supervision after testing positive for marijuana and cocaine use, and he remained at-large on an outstanding arrest warrant for several months equating to an "escape from custody").

---

[4] A 2-level enhancement for Obstruction under § 3C1.1 was not applied.

Given Jackson's poor pretrial supervision compliance including positive drug screens and failure to attend court ordered assessments, coupled with him absconding from supervision, followed by an arrest for a violent crime, this Court should deny a three-level reduction for acceptance of responsibility.

B. 4-Level Enhancement Under § 2K2.1(B)(6)(A).

Section 2K2.1(b)(6)(A) states that if the defendant used or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be transported out of the United States, increase by 4 levels. Jackson objects to paragraph 28 of the Presentence Report writer's application of the § 2K2.1(b)(6)(A) four-level enhancement for transferring firearms with knowledge they would be transported out of the United States, alleging the undercover agent's "statement that they sold firearms in Canada is not enough to apply this enhancement. The statement alone did not provide a basis for knowledge, intent, or reason to believe that the statement was true (and it was not true). Applying the enhancement based on a bare statement alone would change guidelines levels based on what CIs or UAs decide to say in communications with targets even when those statements have no bearing on a defendant's conduct." (R. 170: PSR *SEALED* PageID 1285).

The government agrees with the Probation Office writer's response that Jackson was told that information and conducted the firearms transactions without regard for the intended destination, and further, actual transfer of the firearm outside the United States is not required per the plain reading of § 2K2.1(b)(6)(A).

From the outset of the firearm transactions, it was clear Jackson had no concern for the type of firearms he sold, to whom he sold, or the intended use of the firearms. He began his first conversation with an undercover agent on June 12, 2023, by asking if he was a police officer. (R.

170: PSR *SEALED* ¶ 11, PageID 1268). Upon hearing the response in the negative and being told that the guns would be trafficked to Canada, Jackson sold agents a Glock pistol with a machinegun conversion device, and a Masterpiece Arms pistol with a high-capacity magazine, that had been reported stolen. (*Id.*). Jackson sold two more Glock pistols, both of which were connected to multiple recent shootings, and another machinegun conversion device to agents on June 13, 2023. (*Id.*). Jackson sold two pistols, one with an obliterated serial number, on June 22, 2023, and sold two more conversion devices and a rifle to agents on July 24, 2024. (*Id.*, ¶ 13 and 17, PageID 1268-69). On its face, he sold agents illegal firearms, meaning the machinegun conversion devices and defaced pistol could not be lawfully possessed, and therefore knew they were transferred to a recipient whose "possession or receipt of the firearm would be unlawful," regardless of the agent telling him it would trafficked to Canada, although that fact also supports his knowledge.

In considering more offense conduct, the covert nature of the transactions, e.g., Jackson wearing a hoodie and face mask when entering the agent's car in the first transaction June 12, 2023 and providing a 'street' name ("Switch"), asking if the agents were police, conducting the transactions in parking lots, watching the agent put the purchased firearms in a compartment on June 13, 2023, selling an obliterated firearm on June 22, 2023, and selling the agents two more machinegun conversion devices with a rifle on July 24, 2023, it is clear that these transactions were inherently illegal, firearms were being trafficked and transferred to recipients whom Jackson reasonably knew intended to use the firearms illegally, and that the firearms would be taken out of the country. (R. 170: PSR *SEALED* ¶¶ 11-17, PageID 1268-69). He engaged in the sales to predominantly make a profit knowing the illegality of the firearms and the sales.

C.  Application of § 2K2.1(b)(5) and § 2K2.1(b)(6)(A) is permissible.

The Defendant may be subject to both the § 2K2.1(b)(5), four-level enhancement for firearms trafficking and the § 2K2.1(b)(6)(A) four-level enhancement for used or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be transported out of the United States. The Sixth Circuit has held that the legal interpretations of the Sentencing Guidelines, including whether impermissible double counting occurred, is reviewed de novo. *United States v. Clark*, 11 F.4th 491, 493-494 (6th Cir. 2021).

Section 2K2.1(b)(5) states that a defendant engaged in firearms trafficking if he:

> (i) transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual; and
> (ii) knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual—
> (I) whose possession or receipt of the firearm would be unlawful; or
> (II) who intended to use or dispose of the firearm unlawfully.

Because a court may impose two enhancements arising from the same conduct, provided the enhancements "penalize distinct aspects of [a defendant's] conduct and distinct harms," *United States v. Smith*, 516 F.3d 473, 476 (6th Cir. 2008) (internal quotations and citation omitted), application of both the § 2K2.1(b)(5) and § 2K2.1(b)(6)(A) enhancements do not constitute double counting. If precisely the same aspect of a defendant's conduct results in an increase to a sentence in two ways, then impermissible double counting occurs. *United States v. Nunley*, 29 F.4th 824, 830 (6th Cir. 2022). If the defendant is punished for "distinct aspects of his conduct," then no double counting has occurred. *United States v. Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010). "In other words, district courts may impose two enhancements arising from the same conduct,

9

provided the enhancements penalize distinct harms." *Nunley*, 29 F.4th at 830 (internal quotation marks and ellipsis omitted). While the § 2K2.1(b)(5) enhancement punished Defendant for trafficking in firearms, "regardless of whether anything of value was exchanged," U.S.S.G. § 2K2.1(b)(5) cmt. 13(A), the § 2K2.1(b)(6)(B) enhancement punished Defendant for facilitating drug distribution when he accepted narcotics as consideration for the firearm. *See also United States v. Sweet*, 776 F.3d 447, 450-51 (6th Cir. 2015).

Sister circuits have also held that applying both § 2K2.1(b)(5) and § 2K2.1(b)(6) is permissible and not double-counting in multiple scenarios. See *United States v. Villa Carvajal*, 516 F. App'x 808, 810 (11th Cir. 2013) (district court properly applied both enhancements to defendant convicted of making false statements in acquisition of a firearm and dealing in firearms who exported firearms to Columbia based on explanation that "[T]he trafficking part is selling them to make a profit on the sale; in other words, engaging in being an arms dealer. The additional harm here is selling them and exporting them overseas."); *United States v. Singletary*, 29 F.4th 313, 317 (5th Cir. 2022) (holding that no double-counting occurred as §2 K2.1(b)(6)(B) applied to the trafficking of guns to facilitate a drug distribution conspiracy while § 2K2.1(b)(5) went to the persons who could not lawfully possess the weapons); *United States v. Asante*, 782 F.3d 639, 647 (11th Cir. 2015) (finding the trafficking enhancement increases a firearm offender's offense level for conduct that he knows or has reason to believe will result in a firearm being transferred to someone whose possession or use of that weapon is unlawful, regardless of whether that occurs in or out of the United States while the exporting enhancement is concerned instead with a firearm offender's conduct undertaken with the intent to export firearms out of the United States, even if the offender was not trafficking - these two enhancements are aimed at different harms as neither enhancement fully accounts for both harms); *United States v. Rodriguez*, 884 F.3d 679, 680-681

(7th Cir. 2018) (Finding both enhancements applied when defendant knew the guns he sold were being used to commit other felonies for § 2K2.1(b)(6)(B) and sold to prohibited persons in 2K2.1(b)(5)); and *United States v. Vega-Genova*, 734 F. App'x 935 (5th Cir. 2018) (consecutive sentences for two counts of unlawful transfer of destructive devices applying both enhancements for trafficking in firearms and exportation of firearms upheld).

The sentencing enhancements as applied to Jackson serve to punish different offense conduct, that being the trafficking of firearms, evidenced by the brokerage fees paid, number of firearms, and types of firearms, nature of the covert transactions, and the transfer of firearms out of the United States. Thus both enhancements are properly applied.

  D. Consecutive Sentences.

Jackson entered guilty pleas to conspiracy and possession of machinegun, in violation of 18 U.S.C. §§ 371 and 922(o), engaging in the business of dealing firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A), and possession of an obliterated firearm, in violation of 18 U.S.C. § 922(k). The statutory maximum term of imprisonment is 10 years for possessing a machinegun, and 5 years for dealing firearms without a license and possession of an obliterated firearm. The calculated advisory Guideline range without acceptance of responsibility is 168 to 210 months, well above the statutory maximum. (R. 170: PSR *SEALED* ¶ 70, PageID 1278). This Court can and should consider whether consecutive sentences should be imposed, in part or in total.

  1. Consecutive Sentences – Federal Conviction.

While Section 3D1.2(d) requires offenses to be grouped, that does not bind the Court to impose concurrent sentences. Section 5G1.2(d) instructs the Court that "[I]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the

11

sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law." See *United States v. Chase*, 296 F.3d 247, 251 (4th Cir. 2002).[5] The Presentence Report correctly grouped Counts One through Seven under § 3D1.2(d) in calculating the offense level, but this Court may still consider whether individual counts of conviction can run consecutive to another. (R. 170: PSR *SEALED* ¶ 23, PageID 1269).

Jackson has entered guilty pleas to possessing machineguns, and engaging in the unlicensed dealing in firearms, which are wholly separate offenses. Machineguns are inherently illegal, whereas selling ordinary firearms such as pistols can be legal or illegal depending on the circumstances. His conduct involved the commission of separate and distinct offenses, and while both amounting to criminal conduct, clearly both offenses involved the worst forms of the offenses. His conduct during a single month in June 2023, as evidenced by the Presentence Report and sentencing enhancements, went even further and included possessing and selling a stolen firearm with a machinegun conversion device and a high capacity magazine, possessing and selling firearms used in shootings, possessing and selling an obliterated firearm, and his flight from officers after being found in a car used in a robbery containing multiple firearms, also with high capacity magazines that were used in shootings, drugs, and ski masks with other coconspirators. (R. 170: PSR *SEALED* ¶¶ 6-17, PageID 1266-69).

Given Jackson's offense conduct and escalating level of violence, his consistent possession of firearms, his prior record, his poor adjustment under state or federal court supervision, and in

---

[5] The government appreciates *Chase* was decided before *United States v. Booker*, 543 U.S. 220 (2005), and that following *Booker* the Sentencing Guidelines are advisory.

considering the advisory Guideline range without acceptance of responsibility at 168 to 210 months, a sentence confined to the statutory maximum of 120 months would severely undermine the purposes and principles of sentencing. (R. 170: PSR *SEALED* ¶ 70, PageID 1278).

The Sixth Circuit has upheld the imposition of consecutive firearm sentences, regardless of mandatory minimum sentences or grouping of counts, when the district court properly exercises its discretion after considering § 3553(a) factors. *United States v. Johnson*, 640 F.3d 195, 208 (6th Cir. 2011). Where the district court reviews the sentencing factors, the defendant's personal history and characteristics, the dangerous nature of the offense, the goals of imprisonment including promoting public safety and deterrence, and expresses its intent not to over-incarcerate, such that its reasons for imposing consecutive sentences were intertwined with its reasons for the overall length of sentence, the Court has properly used its discretion in imposing consecutive sentences for counts of carjacking, using a firearm during a crime of violence, and felon in possession. *United States v. Dial*, 694 F. App'x 368, 372-73 (6th Cir. 2017). *See also United States v. Lett*, 782 F. App'x 429 (6th Cir. 2019) (consecutive sentences for felon in possession and possession of stolen firearm properly imposed when district court explained in detail why it imposed sentence and thoroughly analyzed who defendant was, what he did, and why consecutive sentences were warranted to punish him, protect public from him, and deter others from committing similar crimes).

2. <u>Consecutive Sentences – Undischarged State Sentence</u>.

Jackson is currently under state indictment for a violent robbery of a Brinks employee of U.S. Currency owned by a financial institution, during which the Brinks employee was shot. (R. 170: PSR *SEALED* ¶ 46, PageID 1273). While Jackson enjoys the presumption of innocence,

should he be convicted of any crime the Court may also anticipate whether concurrent or consecutive sentences to an undischarged term of imprisonment is appropriate.

Section 5G1.3(d) instructs the Court to consider that "[I]n any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." At the outset, the government submits that Jackson's arrest on August 21, 2024, is unrelated to the instant offense conduct in the counts of conviction, which occurred from June through July of 2023, and cannot be considered relevant conduct. Additionally, the Presentence Report does not include additional enhancements or cross-references based on relevant conduct in the calculations, e.g., cross reference to § 2A2.1 attempted murder. See R. 170: PSR *SEALED* PageID 1263-86.

In *Setser v. United States*, 566 U.S. 231, 243 (2012), the Supreme Court determined that federal district courts have the authority and discretion to order that a federal sentence run consecutively to an *anticipated but yet-to-be-imposed state sentence* and that the court's discretion is not limited by 18 U.S.C. § 3584(a) (emphasis added). The *Setser* Court continued by noting that a sentence cannot be deemed substantively unreasonable because of information unavailable at the time of sentencing. *Id.*, 243-244. Essential to the analysis is the Court's recognition that it has discretion in considering concurrent versus consecutive sentences for an undischarged and yet-to-be-imposed state sentence, regardless of the potential duration of sentence. *United States v. Moore*, 512 F. App'x 590, 593-94 (6th Cir. 2013). Most importantly, the Court must "make generally clear the rationale under which it has imposed the consecutive sentence and seeks to ensure an appropriate incremental penalty for the instant offense." *United States v. Berry*, 565 F.3d 332, 342 (6th Cir. 2009). In addition to the Section 3553(a) factors and § 5G1.3(d), the Court may consider

national averages, Jackson's criminal history, and exercising discretion in weighing particular factors. *United States v. Grant*, 794 F. App'x 508, 510-11 (6th Cir. 2020).

For the foregoing reasons, the government requests this Court consider sentencing Jackson to consecutive sentences, whether for his federal counts to run consecutive, or concurrent federal counts consecutive to his potential state sentence. Jackson is without question, the most dangerous offender within the conspiracy with the highest potential of recidivism and inability to comply with court ordered supervision.

### III. CONCLUSION

The government respectfully requests this Court adopt the calculations contained in the Presentence Report, overrule Jackson's objection to the § 2K2.1(b)(6)(A) enhancement, deny any reduction for acceptance of responsibility, and sentence within the advisory Guideline range of 168-210 months, by consecutive sentences if necessary.

Respectfully submitted,

REBECCA C. LUTZKO
United States Attorney

By: /s/ Kelly L. Galvin
Kelly L. Galvin (OH: 0062585)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3731
(216) 522-8355 (facsimile)
Kelly.L.Galvin@usdoj.gov
